UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C.E.P., | No. 1:25-cv-01559-EFB (HC) |
| Petitioner, | |
| v. | ORDER |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner J.C.E.P. is a noncitizen who has been in immigration removal proceedings since 2019. Petitioner presents evidence that, after being briefly detained upon his entry into the United States, he was released on parole and thereafter complied with his release requirements, appeared at all immigration court proceedings as required, and suffered no criminal infractions. On September 25, 2025, when petitioner appeared at the Stockton office of Immigrations and Customs Enforcement ("ICE") for an appointment, ICE agents arrested him. ICE transported petitioner to facilities in Modesto and Fresno, then to a facility in Bakersfield, California, where he remains detained currently.

On November 14, 2025, petitioner filed a petition for writ of habeas corpus, ECF No. 1; a motion for temporary restraining order, ECF No. 2; and a motion to proceed via pseudonym, ECF No. 3. For the reasons set forth below, the Court grants petitioner's motion for a temporary

restraining order.[1]

## BACKGROUND[2]

Petitioner is a citizen and national of Mexico who entered the United States in 2019. ECF No. 1 ¶ 35; ECF No. 11 at 1. Shortly after entry, petitioner was detained by the Department of Homeland Security and placed on parole, with notice to appear at removal proceedings. ECF No. 1 ¶ 46. Petitioner was enrolled in the Intensive Supervision Appearance Program. ECF No. 1 ¶ 47. For a period of time, petitioner was required to wear an ankle monitor as a condition of parole. ECF No. 1 ¶ 46. Per petitioner, he complied with that and all other reporting requirements and accrued no criminal infractions. ECF No. 1 ¶¶ 46-48.

Petitioner alleges that he timely filed an Application for Asylum and Withholding of Removal (Form I-589), which is set for hearing on January 9, 2026. ECF No. 1 ¶ 50. On September 24, 2025, petitioner received a phone call from an ICE agent requesting that he report to the local ICE office the following day. ECF No. 1 ¶ 51; ECF No. 11, Ex. A at 4. Petitioner complied and ICE agents detained him when he arrived at the Stockton ICE office on the morning of September 25, 2025.[3] *Id*. He filed the instant petition on November 14, 2025, along with a motion to proceed via pseudonym and a motion for temporary restraining order. ECF Nos. 1-3. Respondents filed an opposition to the motion for restraining order on November 18, 2025, ECF No. 11, and petitioner filed a reply brief on November 19, 2025. ECF No. 13. The parties have

---

[1] Upon review of the parties' filings, the Court concludes that oral argument would not materially assist it in resolution of petitioner's motion and resolves the motion on the briefs.

[2] Petitioner's verified petition establishes the facts articulated in this section. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[3] In his petition and motion for temporary restraining order, petitioner alleges that he received the telephone call on August 24, 2025 and was detained the following morning. ECF No. 1 ¶¶ 12, 51. That appears to be a typographic error, as elsewhere petitioner represents that he was phoned on September 24, 2025 and detained on September 25, 2025, *see* ECF No. 1 ¶ 93 & Prayer for Relief; ECF No. 1, Declaration of Natalia Vieira Santanna ¶ 15; ECF No. 2 at 7-8, which accords with the documentary evidence submitted by respondents. ECF No. 11, Declaration of Christopher Jerome ¶ 51 & Ex. A at 1, 4 & Ex. B.

consented to proceed before a magistrate for all proceedings.  ECF No. 12.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, the plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  Where, as here, the Government is the opposing party to a request for temporary restraining order, the third and fourth factors "merge" in the court's analysis. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  The first factor, "[l]ikelihood of success on the merits[,] is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

In his petition, petitioner raises two claims for relief.  He alleges that his procedural and substantive due process rights are violated by the Government detaining him without a custody hearing before a neutral adjudicator in which the Government proves by clear and convincing evidence that petitioner is a danger to the community or flight risk.  ECF No. 1 ¶¶ 96-106. Petitioner requests the court issue a temporary restraining order enjoining respondents from continuing to detain him, compelling petitioner's immediate release from immigration detention, and enjoining respondents from re-arresting petitioner until he is afforded a hearing before a neutral decisionmaker, as required by the Due Process clause of the Fifth Amendment, to determine whether circumstances have materially changed such that his reincarceration would be

justified because there is clear and convincing evidence establishing that he is a danger to the community or a flight risk. ECF No. 2 at 2.

Respondents counter that a temporary restraining order should not issue because petitioner is unlikely to succeed on the merits of his claims for several reasons: because his detention is specifically authorized by statute, viz., 8 U.S.C. § 1225; because petitioner was properly detained pursuant to that statutory section; because petitioner has no due process interest in a pre-detention hearing; and because the Government's interest in detaining petitioner outweighs any due process interest petitioner may have. ECF No. 11 at 3-12. Respondents further argue that petitioner's request for a temporary restraining order also fails because petitioner has not demonstrated a likelihood irreparable harm and because the balance of equities and public interest weigh against entry of a temporary restraining order. *Id*. at 12-13. Finally, respondents argue petitioner's requested relief exceeds the bounds of this court's authority in a habeas corpus action. *Id*. at 13-14.

For the reasons explained below, the court grants petitioner's motion.

**A. Likelihood of Success on the Merits**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id*. (internal citations omitted). Substantive due process protections "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693 (internal citations omitted).

To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through

4

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient"). The *Mathews* test applies in cases where a petitioner raises a due process challenge to his immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

Here, petitioner has shown a likelihood of success on his procedural due process claim.

**1. Petitioner Possessed a Protected Liberty Interest**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of

5

confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release is similar.  Petitioner presented evidence that, after his release on parole in 2019 and consistent with the conditions of his release, he settled with his spouse and children in Modesto, California.  ECF No. 1 ¶ 10. He became employed full-time and developed bonds in his community, including through his church, which he attends regularly.  ECF No. 1 ¶ 10.  His employer lauds him as having "consistently demonstrated professionalism, reliability, and respect toward colleagues, supervisors, and company policies," such that his employer views him as "a valued member of [their] team."  ECF No. 1, Ex. 1.  When DHS released petitioner on parole in 2019, this reflected a determination that he did not pose a flight risk or danger to the community.  *See Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8).  Petitioner avers that he has no criminal record, which respondents appear to confirm.  ECF No. 1 ¶ 10; ECF No. 11, Declaration of Christopher Jerome ¶ 51, Ex. A at 2.  Petitioner further argues that, following his release in 2019, he complied with the release terms and appeared at all immigration proceedings and check-ins as required, although respondents dispute whether petitioner in fact complied with the terms of his supervision.  ECF No. 1 ¶¶ 8-11; ECF No. 11 at 2 & Declaration of Christopher Jerome ¶¶ 7-50.  In all material respects, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*. *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Respondents posit that the liberty interest recognized in *Morrissey* in a criminal context does not apply to parole utilized for supervising noncitizens in an immigration context.  ECF No. 11 at 10.  This position has been repeatedly rejected by the Supreme Court.  In *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), for instance, the Court cited centuries of precedent for its holding that, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause

6

1   applies to all 'persons' within the United States, including aliens, whether their presence here is
2   lawful, unlawful, temporary, or permanent," which arises from the alien's liberty interest inherent
3   in the Fifth Amendment's Due Process clause.  As the Court explained, "Freedom from
4   imprisonment—from government custody, detention, or other forms of physical restraint—lies at
5   the heart of the liberty that Clause protects," regardless of the immigration status of the alien.  *Id*.
6   at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (holding that a
7   noncitizen detained under 8 U.S.C. § 1226(a) possessed a liberty interest in freedom from
8   detention cognizable under the Due Process Clause); *Diouf v. Napolitano*, 634 F.3d 1081, 1086-
9   87 (9th Cir. 2011), *abrogated on other grounds as recognized in Rodriguez Diaz v. Garland*, 53
10  F.4th 1189, 1200-01 (9th Cir. 2022) (holding that "[r]egardless of the stage of the proceedings,"
11  that a noncitizen finds themselves in the immigration process, "the same important interest is at
12  stake—freedom from prolonged detention").
13          Accordingly, the Court finds that, pursuant to *Morrissey* and its progeny, petitioner does
14  have a liberty interest in his release, implicating his rights under the Constitution's Due Process
15  clause.  *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (reaching the
16  same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET),
17  2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No.
18  1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v.
19  Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025)
20  (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal.
21  July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration
22  detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025
23  WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have
24  been released have a strong liberty interest).
25  ////
26  ////
27  ////
28  ////

**2. Constitutionality of the Procedures Depriving Petitioner of His Liberty**

    **a. Applicability of 8 U.S.C. § 1225**

Respondents take the position that petitioner's due process claims must fail, because he is lawfully detained under 8 U.S.C § 1225(b)(2)(A), which itself possesses no constitutional infirmity. ECF No. 11 at 2-11, Declaration of Christopher Jerome ¶ 52. Petitioner argues that his detention is instead governed by 8 U.S.C. § 1226(b), and that he is entitled to a bond hearing before a neutral arbiter before his parole is revoked and he is detained. ECF No. 2 at 13-15. The weight of authority supports petitioner, such that he has shown a substantial likelihood of success on his procedural due process claim.

"The usual removal process" of a noncitizen "involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). These proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Both 8 U.S.C. sections 1225 and 1226 address the detention of inadmissible noncitizens while removal proceedings are pending. Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108. Respondents do not argue that the exceptions of section 1226(c) are implicated here. *See* ECF No. 11.

When a noncitizen has been placed on bond or conditional parole pursuant to section 1226(a), "[t]he Attorney General at any time may revoke a bond or parole . . ., rearrest the alien under the original warrant, and detain the alien." 8 U.S.C.A. § 1226(b). The BIA has placed the

8

following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)).

Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197. It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission"). Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.

Respondents assert that petitioner's detention is proper under section 1225(b)(2)(A). ECF No. 11 at 2, Declaration of Christopher Jerome ¶ 52. Section 1225(b)(2) concerns the "[i]nspection of other [noncitizens]" and "mandates detention 'if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted[.]'" *Rodriguez Diaz*, 53 F.4th at 1197 (quoting § 1225(b)(2)(A)). Thus, "[s]ummarizing the relevant distinctions . . ., noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246-47 (W.D. Wash. 2025).

The Court is persuaded that petitioner is likely to succeed on the merits of his argument that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision. The crux of respondents' statutory interpretation argument is that petitioner meets the definition of an alien "'seeking admission' and who an immigration officer has determined [is] 'not clearly and beyond a doubt entitled to be admitted,'" as set forth in 8 U.S.C. § 1225(b)(2)(A). ECF No. 11 at 5. Numerous courts, however, have rejected such an expansive interpretation of section 1225(b) and its application to persons, like petitioner, who are present within the United States awaiting a

final removal determination. *See generally Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *see also Rodriguez*, 779 F. Supp. 3d at 1258-61; *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025); *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025). The court adopts the cogent, detailed statutory analysis set forth in *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025). In short, respondents' urged interpretation of section 1225(b) "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez*, 779 F. Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7. Respondents' interpretation conflicts with the legislative history of 8 U.S.C. § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of Homeland Security, which "inform[s]" the courts' understanding of the law. *Id*. at 1260-61 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025). Finally, respondents' position is fundamentally untenable because "sections 1226(a) and 1225(b) cannot be applied simultaneously. Their detention regimes are facially inconsistent: one provides for discretionary release with procedural protections, while the other mandates detention without discretion." *Salcedo Aceros*, 2025 WL 2637503, at *8. The statutory scheme, taken as an entirety, makes it "not possible for [petitioner] to be simultaneously subject to both detention regimes" as a matter of statutory interpretation and, as a matter of due process, when "the Government [in 2019] placed [petitioner] in normal removal proceedings under Sections § 1229, not § 1225(b)(1), and chose to release h[im] on conditional parole under § 1226(a), not hold h[im] in detention under § 1225(b)(2)," it created a reliance interest in his continued freedom so long as he abided by the terms of his release. *Id*. For all of these reasons, the court finds that petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

   **b. Process to Which Petitioner Is Due**

10

Petitioner has also shown his likelihood to succeed on the merits of his claim to the extent he argues that his detention under section 1226(b) without an opportunity for a hearing violates his due process rights. As noted above, 8 U.S.C. § 1226(b) provides that DHS may revoke a noncitizen's bond or parole "at any time," even if that individual has previously been released. In application, however, the BIA has required that "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Ortega*, 415 F. Supp. 3d at 968 (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)). The requirements of due process, of course, supersede statutory and regulatory authority, and numerous courts have held that the Due Process clause entitles a noncitizen to notice and an opportunity to be heard before his parole or bond is summarily revoked under section 1226(b). *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Ortega*, 415 F. Supp. 3d at 968; *Lopez v. Lyons*, No. 2:25-CV-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN (E.D. Cal. Sept. 29, 2025); *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *11 (W.D.N.Y. July 16, 2025); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025).

As noted above, to determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Respondents do not dispute that, prior to his instant detention, petitioner had remained out of custody for over five years and during that time, was gainfully employed, developed ties to his community through his church and employer, and raised his children alongside his spouse. ECF No. 1 ¶ 10 & Ex. A. In short, petitioner's release has permitted him to build a life within the

bounds of the conditions imposed by his release. He has a substantial private interest in being out of custody, and his detention denies him that liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The risk of erroneous deprivation is also considerable. Detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Respondents do not dispute that petitioner has no criminal record. ECF No. 1 ¶ 10; ECF No. 11, Declaration of Christopher Jerome ¶ 51, Ex. A at 2. Respondents argue that, if section 1226(b) does apply, petitioner's violations of the terms of his parole constitute changed circumstances justifying his detention. ECF No. 11 at 10. Without a hearing, however, there is no mechanism for petitioner to challenge the veracity of this representation. In this proceeding, petitioner has presented argument, and some evidence in support, disputing that he violated the terms of his parole in the instances identified by respondent. *See* ECF No. 13 at 3-5, Ex. 1. Thus, whether petitioner in fact violated the terms of his parole and, if so, whether that constitutes a change in circumstances justifying his arrest, or indication that he has flight risk or danger to the community, are factual questions directly bearing on petitioner's entitlement to liberty under the statute. Respondents' failure to provide petitioner even basic process in the resolution of these questions injects into the proceeding a significant risk of erroneous deprivation. *See Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011); *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir. 1989); *see also Ramandi v. Field Office Director, Ice Ero San Francisco*, No. 1:25-CV-01462-JLT-EPG, 2025 WL 3182732, at *11 (E.D. Cal. Nov. 14, 2025).

Finally, respondents' interest in detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and

impose a 'minimal' cost." (citations omitted)).

Thus, having found that petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him immediately upon detention, the Court finds that petitioner has established a likelihood of success on the merits of his procedural due process claim.

### B. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Rodriguez*, 779 F. Supp. 3d at 1262. Petitioner has thus established irreparable harm.

### C. Balance of the Harms and Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird*, 81 F.4th at 1040. Public interest concerns are always implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, the analysis of the *Pinchi* court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is

13

>significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk—while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 792 F.Supp.3d at 1037-38.

There also appears to be no dispute as to petitioner's risk of flight or danger to the community. *See generally* ECF No. 11. For all of these reasons, the Court concludes that the equities and public interest weigh in favor of petitioner.

### D. Permissibility of Petitioner's Requested Relief

Respondents additionally argue that petitioner's request for injunctive relief, including a temporary restraining order, must fail because it exceeds the scope of the Court's authority in habeas corpus. ECF No. 11 at 13-14. Per respondent, the court may order petitioner's release as a remedy, but is not empowered to require a particular process for his re-detention, as that authority remains with the legislature. *Id*. This argument is not well-taken. A habeas corpus action is the proper vehicle for an alien to challenge his detention and, in granting relief, the federal court may order that the petitioner may not be detained unless certain constitutional requirements are met, including those mandated by the Due Process clause. Such a "prohibitory injunction[]," which "prohibits the government from" undertaking certain acts "that will likely result in unconstitutional detentions" is well-within the federal courts' sui generis authority. *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017); *see, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022). Petitioner has made an adequate showing that, by virtue of the due process violations he experienced, he is entitled to the requested relief.

### E. Substantive Due Process

Granting petitioner's request for temporary restraining order and enjoining the

government from detaining him "obviates the threat of any imminent deprivation of h[is] substantive due process rights," so the Court need not consider his substantive due process claim at this stage. *See Pinchi*, 792 F.Supp.3d at 1039, n.1; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025).

### F. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

### CONCLUSION AND ORDER

Accordingly, petitioner's motion for temporary restraining order, ECF No. 2, is GRANTED. Respondents are ordered to immediately release petitioner from custody. Respondents may not re-detain petitioner without a pre-deprivation bond hearing before a neutral arbiter at which the government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is required.

The Court's order dated November 20, 2025 remains in effect, prohibiting respondents from transferring petitioner to another detention center outside of this judicial district, pending further order of the court. *See* ECF No. 14.

Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue pending a final disposition of this matter. Respondents shall file any further response to petitioner's motion by November 28, 2025. Petitioner may file a reply by December 5, 2025. The parties may stipulate to extend this briefing schedule. This temporary restraining order, which is issued following briefing by both parties, shall remain in effect

1 | pending the Court's ruling on the motion for preliminary injunction.

2 |     Respondents are ordered to respond to petitioner's motion to proceed via pseudonym, ECF No. 3, no later than November 28, 2025.  Petitioner may file a reply by December 5, 2025. The parties may stipulate to extend this briefing schedule.

Dated: November 24, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE