UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C.E.P., | No.  1:25-cv-01559-EFB (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner J.C.E.P. is a noncitizen who has been in immigration removal proceedings since 2019.  Petitioner presents evidence that, after being briefly detained upon his entry into the United States, he was released on parole and thereafter complied with his release requirements, appeared at all immigration court proceedings as required, and suffered no criminal infractions.  On September 25, 2025, when petitioner appeared at the Stockton office of Immigration and Customs Enforcement ("ICE") for an appointment, ICE agents arrested him.  ICE transported petitioner to facilities in Modesto and Fresno, then to a facility in Bakersfield, California.

On November 14, 2025, petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order.  ECF Nos. 1-2.  The court granted the motion and ordered respondents to release petitioner from custody.  ECF No. 16.  Respondents were subsequently ordered to show cause why a preliminary injunction should not issue.  Respondents filed an opposition to a preliminary injunction and moved to hold any remaining proceedings in this case in abeyance pending the resolution of the appeal in *Rodriguez v. Bostick*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).  ECF No. 17.  The court denied the motion to hold proceedings in abeyance,

ordered respondents to file an answer to the petition, and, in the interests of judicial economy, consolidated the request for further injunctive relief with the determination of the merits of the petition under Federal Rule of Civil Procedure 65(a)(2).  ECF No. 20.  Respondents subsequently filed an answer to the petition.  ECF No. 21.  Petitioner did not file a traverse.  For the following reasons, the petition for writ of habeas corpus is GRANTED.

## BACKGROUND[1]

Petitioner is a citizen and national of Mexico who entered the United States in 2019.  ECF No. 1 ¶ 35; ECF No. 11 at 1.  Shortly after entry, petitioner was detained by the Department of Homeland Security (DHS) and placed on parole, with notice to appear at removal proceedings.  ECF No. 1 ¶ 46.  Petitioner was enrolled in the Intensive Supervision Appearance Program.  ECF No. 1 ¶ 47.  For a period of time, petitioner was required to wear an ankle monitor as a condition of parole.  ECF No. 1 ¶ 46.  Per petitioner, he complied with that and all other reporting requirements and accrued no criminal infractions.  ECF No. 1 ¶¶ 46-48.

Petitioner alleges that he timely filed an Application for Asylum and Withholding of Removal (Form I-589), which was set for hearing on January 9, 2026.  ECF No. 1 ¶ 50.  On September 24, 2025, petitioner received a phone call from an ICE agent requesting that he report to the local ICE office the following day.  ECF No. 1 ¶ 51; ECF No. 11, Ex. A at 4.  Petitioner complied and ICE agents detained him when he arrived at the Stockton ICE office on the morning of September 25, 2025.[2]  *Id*.  He filed the instant petition on November 14, 2025.  The parties have consented to proceed before a magistrate for all proceedings.  ECF No. 12.

---

[1] Petitioner's verified petition establishes the facts articulated in this section.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).  Furthermore, in the interests of judicial economy, and due to the overlap of the relevant issues, portions of this order will be taken from the court's previous orders.  ECF Nos. 16, 19.

[2] In his petition and motion for temporary restraining order, petitioner alleges that he received the telephone call on August 24, 2025 and was detained the following morning.  ECF No. 1 ¶¶ 12, 51.  That appears to be a typographic error, as elsewhere petitioner represents that he was phoned on September 24, 2025 and detained on September 25, 2025, *see* ECF No. 1 ¶ 93 & Prayer for Relief; ECF No. 1, Declaration of Natalia Vieira Santanna ¶ 15; ECF No. 2 at 7-8, which accords with the documentary evidence submitted by respondents.  ECF No. 11, Declaration of Christopher Jerome ¶ 51 & Ex. A at 1, 4 & Ex. B.

2

**LEGAL STANDARD**

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

**DISCUSSION**

In his petition, petitioner raises two claims for relief. He alleges that both his procedural and substantive due process rights are violated by the Government detaining him without a custody hearing before a neutral adjudicator in which the Government proved by clear and convincing evidence that petitioner is a danger to the community or flight risk. ECF No. 1 ¶¶ 96-106. Petitioner, who was ordered released from detention by this court (ECF No. 16), requests the court further enjoin respondents from re-arresting petitioner until he is afforded a hearing before a neutral decisionmaker, as required by the Due Process Clause of the Fifth Amendment, to determine whether circumstances have materially changed such that his reincarceration would be justified because there is clear and convincing evidence establishing that he is a danger to the community or a flight risk.

In their substantive answer to the petition for writ of habeas corpus, respondents "rely on the Due Process arguments in the Opposition to Petitioner's Motion for TRO." ECF No. 21 at 7. In addition, respondents maintain that the petition should be dismissed or stayed due to petitioner's failure to exhaust administrative remedies. *Id.* at 5-7. For the reasons explained below, the court rejects respondents' arguments and grants the petition.

**A. Prudential Exhaustion**

In his petition, petitioner requests that the court waive prudential exhaustion on the grounds of futility and the irreparable harm to petitioner if he is detained. ECF No. 1 at 9-10. Respondents counter that waiver is not warranted and ask this court to either dismiss or stay the petition pending exhaustion. Having reviewed the argument and the record, the Court finds waiver appropriate here.

"Exhaustion can be either statutorily or judicially required," but if "exhaustion is a prudential requirement, a court has discretion to waive the requirement." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). The federal "[d]istrict courts are authorized by 28 U.S.C § 2241 to consider petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," but the Court of Appeals "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"[C]ourts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks and citation omitted). Even if these factors all weigh in favor of prudential exhaustion, however, "a court may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of the administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, petitioner argues that the prudential exhaustion requirement should be waived because exhaustion would be futile and would subject him to irreparable injury. ECF No. 1 at 9-10. The court agrees that waiver of petitioner's exhaustion of administrative remedies is appropriate. Petitioner has demonstrated that presentation of his claims to the BIA would be futile in light of the BIA's decision in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 20025). *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7, n.9 (E.D. Cal. Oct. 27, 2025).

In addition, given the court's finding in this and other orders that petitioner has established a likelihood of irreparable injury should he be detained without a hearing, the court waives any

4

prudential exhaustion requirement.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254 (W.D. Wash. 2025) (waiving prudential exhaustion requirement in similar circumstances); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019); *J.A.C.P.*, 2025 WL 3013328, at *7, n.9; *Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025); *see generally Rodriguez Diaz v. Barr*, No. 4:20-CV-01806-YGR, 2020 WL 1984301, at *5 (N.D. Cal. Apr. 27, 2020) (collecting cases).

### B.  Procedural Due Process

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id*. (internal citations omitted).  Due process protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693 (internal citations omitted).

To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge. See* 424 U.S. at 335.  Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  The *Mathews* test applies in cases where a petitioner raises a due process challenge to his immigration

detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Here, petitioner has shown a likelihood of success on his procedural due process claim.

### 1. Petitioner Possessed a Protected Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release is similar. Petitioner presented evidence that, after his release on parole in 2019 and consistent with the conditions of his release, he settled with his spouse and children in Modesto, California. ECF No. 1 ¶ 10. He became employed full-time and developed bonds in his community, including through his church, which he attends regularly. ECF No. 1 ¶

10.    His employer lauds him as having "consistently demonstrated professionalism, reliability, and respect toward colleagues, supervisors, and company policies," such that his employer views him as "a valued member of [their] team."  ECF No. 1, Ex. 1.  When DHS released petitioner on parole in 2019, this reflected a determination that he did not pose a flight risk or danger to the community.  *See Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8).  Petitioner avers that he has no criminal record, which respondents appear to confirm.  ECF No. 1 ¶ 10; ECF No. 11, Declaration of Christopher Jerome ¶ 51, Ex. A at 2.  Petitioner further argues that, following his release in 2019, he complied with the release terms and appeared at all immigration proceedings and check-ins as required, although respondents dispute whether petitioner in fact complied with the terms of his supervision.  ECF No. 1 ¶¶ 8-11; ECF No. 11 at 2 & Declaration of Christopher Jerome ¶¶ 7-50.  In all material respects, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*.  *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Respondents posit that the liberty interest recognized in *Morrissey* in a criminal context does not apply to parole utilized for supervising noncitizens in an immigration context.  ECF No. 11 at 10.  This position has been repeatedly rejected by the Supreme Court.  In *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), for instance, the Court cited centuries of precedent for its holding that, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," which arises from the alien's liberty interest inherent in the Fifth Amendment's Due Process clause.  As the Court explained, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects," regardless of the immigration status of the alien.  *Id*. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (holding that a noncitizen detained under 8 U.S.C. § 1226(a) possessed a liberty interest in freedom from detention cognizable under the Due Process Clause); *Diouf v. Napolitano*, 634 F.3d 1081, 1086-

7

87 (9th Cir. 2011), *abrogated on other grounds as recognized in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200-01 (9th Cir. 2022) (holding that "[r]egardless of the stage of the proceedings," that a noncitizen finds themselves in the immigration process, "the same important interest is at stake—freedom from prolonged detention").

Accordingly, the court finds that, pursuant to *Morrissey* and its progeny, petitioner does have a liberty interest in his release, implicating his rights under the Constitution's Due Process clause. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (reaching the same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### 2. Constitutionality of the Procedures Depriving Petitioner of His Liberty

#### a. Applicability of 8 U.S.C. § 1225

Respondents take the position that petitioner's due process claims necessarily must fail because he is lawfully detained under 8 U.S.C § 1225(b)(2)(A), which itself possesses no constitutional infirmity. ECF No. 11 at 2-11, Declaration of Christopher Jerome ¶ 52. Petitioner argues that his detention is instead governed by 8 U.S.C. § 1226(b), and that he is entitled to a bond hearing before a neutral arbiter before his parole is revoked and he is detained. ECF No. 2 at 13-15. The weight of authority establishes that petitioner is correct.

"The usual removal process" of a noncitizen "involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). These proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a

8

Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).  Both 8 U.S.C. sections 1225 and 1226 address the detention of inadmissible noncitizens while removal proceedings are pending.  Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted).  Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and  "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c).  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108.  Respondents do not argue that the exceptions of section 1226(c) are implicated here.  *See* ECF No. 11.

When a noncitizen has been placed on bond or conditional parole pursuant to section 1226(a), "[t]he Attorney General at any time may revoke a bond or parole . . ., rearrest the alien under the original warrant, and detain the alien."  8 U.S.C.A. § 1226(b).  The BIA has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance."  *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)).  Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme."  *Rodriguez Diaz*, 53 F.4th at 1197.  It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)."  *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission").  Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.

/////

9

Respondents assert that petitioner's detention is proper under section 1225(b)(2)(A).  ECF No. 11 at 2, Declaration of Christopher Jerome ¶ 52.  Section 1225(b)(2) concerns the "[i]nspection of other [noncitizens]" and "mandates detention 'if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted[.]'" *Rodriguez Diaz*, 53 F.4th at 1197 (quoting § 1225(b)(2)(A)).  Thus, "[s]ummarizing the relevant distinctions . . ., noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246-47 (W.D. Wash. 2025).

The crux of respondents' statutory interpretation argument is that petitioner meets the definition of an alien "'seeking admission' and who an immigration officer has determined [is] 'not clearly and beyond a doubt entitled to be admitted,'" as set forth in 8 U.S.C. § 1225(b)(2)(A). ECF No. 11 at 5.   Numerous courts, however, have rejected such an expansive interpretation of section 1225(b) and its application to persons, like petitioner, who are present within the United States awaiting a final removal determination.  *See generally Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *see also Rodriguez*, 779 F. Supp. 3d at 1258-61; *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025); *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025).  The court adopts the cogent, detailed statutory analysis set forth in *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025).  In short, respondents' urged interpretation of section 1225(b) "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez*, 779 F. Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7.  Respondents' interpretation conflicts with the legislative history of 8 U.S.C. § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of Homeland Security, which "inform[s]" the courts' understanding of the law. *Id*. at 1260-61 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also*

*Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at \*4 (N.D. Cal. Sept. 12, 2025).

Finally, respondents' position is fundamentally untenable because "sections 1226(a) and 1225(b) cannot be applied simultaneously. Their detention regimes are facially inconsistent: one provides for discretionary release with procedural protections, while the other mandates detention without discretion." *Salcedo Aceros*, 2025 WL 2637503, at \*8. The statutory scheme, taken as an entirety, makes it "not possible for [petitioner] to be simultaneously subject to both detention regimes" as a matter of statutory interpretation and, as a matter of due process, when "the Government [in 2019] placed [petitioner] in normal removal proceedings under Sections § 1229, not § 1225(b)(1), and chose to release h[im] on conditional parole under § 1226(a), not hold h[im] in detention under § 1225(b)(2)," it created a reliance interest in his continued freedom so long as he abided by the terms of his release. *Id*. For all these reasons, the court finds that petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### b. Process to Which Petitioner Is Due

Petitioner's detention under section 1226(b) without an opportunity for a hearing violated his due process rights. As noted above, 8 U.S.C. § 1226(b) provides that DHS may revoke a noncitizen's bond or parole "at any time," even if that individual has previously been released. In application, however, the BIA has required that "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Ortega*, 415 F. Supp. 3d at 968 (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)). The requirements of due process, of course, supersede statutory and regulatory authority, and numerous courts have held that the Due Process clause entitles a noncitizen to notice and an opportunity to be heard before his parole or bond is summarily revoked under section 1226(b). *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Ortega*, 415 F. Supp. 3d at 968; *Lopez v. Lyons*, No. 2:25-CV-03174-DJC-CKD, 2025 WL 3124116, at \*3 (E.D. Cal. Nov. 7, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN (E.D. Cal. Sept. 29, 2025); *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at \*11 (W.D.N.Y. July 16, 2025); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at \*4 (E.D. Cal.

11

Mar. 3, 2025).

To determine what process is due, the court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Respondents do not dispute that, prior to his instant detention, petitioner had remained out of custody for over five years and during that time, was gainfully employed, developed ties to his community through his church and employer, and raised his children alongside his spouse. ECF No. 1 ¶ 10 & Ex. A. In short, petitioner's release has permitted him to build a life within the bounds of the conditions imposed by his release. He has a substantial private interest in being out of custody, and his detention denies him that liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The risk of erroneous deprivation is also considerable. Detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Respondents do not dispute that petitioner has no criminal record. ECF No. 1 ¶ 10; ECF No. 11, Declaration of Christopher Jerome ¶ 51, Ex. A at 2. Respondents argue that, if section 1226(b) does apply, petitioner's violations of the terms of his parole constitute changed circumstances justifying his detention. ECF No. 11 at 10. Without a hearing, however, there is no mechanism for petitioner to challenge the veracity of this representation. In this proceeding, petitioner has presented argument, and some evidence in support, disputing that he violated the terms of his parole in the instances identified by respondent. *See* ECF No. 13 at 3-5, Ex. 1. Thus, whether petitioner in fact violated the terms of his parole and, if so, whether that constitutes a change in circumstances justifying his arrest, or indication that he has flight risk or danger to the

12

community, are factual questions directly bearing on petitioner's entitlement to liberty under the statute. Respondents' failure to provide petitioner even basic process in the resolution of these questions injects into the proceeding a significant risk of erroneous deprivation. *See Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011); *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir. 1989); *see also Ramandi v. Field Office Director, Ice Ero San Francisco*, No. 1:25-CV-01462-JLT-EPG, 2025 WL 3182732, at *11 (E.D. Cal. Nov. 14, 2025).

Finally, respondents' interest in detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

Thus, having found that petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him immediately upon detention, the court finds that petitioner is entitled to relief on his procedural due process claim.[3]

## C. Permissibility of Petitioner's Requested Relief

Although petitioner has already been ordered released, respondents additionally argue that petitioner's request for injunctive relief must fail because it exceeds the scope of the court's authority in habeas corpus. ECF No. 11 at 13-14. Per respondent, the court may order petitioner's release as a remedy but is not empowered to require a particular process for his redetention, as that authority remains with the legislature. *Id*. This argument is not well-taken. A habeas corpus action is the proper vehicle for a noncitizen to challenge his detention and, in granting relief, the federal court may order that the petitioner may not be detained unless certain

---

[3] Because the court has determined that petitioner is entitled to relief on his procedural due process claim, the court need not consider petitioner's substantive due process claim.

constitutional requirements are met, including those mandated by the Due Process Clause. Such a "prohibitory injunction[]," which "prohibits the government from" undertaking certain acts "that will likely result in unconstitutional detentions" is well-within the federal courts' sui generis authority. *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017); *see, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022). Petitioner has made an adequate showing that, by virtue of the due process violations he experienced, he is entitled to the requested relief.

**CONCLUSION AND ORDER**

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating his arrest and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have his counsel present.

3. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED: March 24, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14